**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br>v.<br>Anthony Espinoza Gonzales,<br>    Defendant.<br>_____<br>United States of America,<br>    Plaintiff,<br>v.<br>Aaron Anthony Ordonez,<br>    Defendant. | No. CR-17-01311-001-PHX-DGC<br><br><br><br><br><br>No. CR-18-00539-001-PHX-DGC<br><br><br>**ORDER** |

      Defendants Anthony Espinosa Gonzales and Aaron Ordonez are charged in two separate cases with distributing and possessing child pornography in violation of 18 U.S.C. § 2252(a). Each has filed a motion to compel disclosure of the Torrential Downpour software program used by the FBI in the investigation that led to his indictment. Doc. 25, Case No. CR-17-01311; Doc. 32, Case No. CR-18-00539. Both motions are fully briefed, and the Court held a joint evidentiary hearing on January 31, 2019. Computer forensics expert Tami Loehrs testified on behalf of Defendant Gonzalez,

and FBI Agent Jimmie Daniels testified for the government. The Court will grant Defendant Gonzalez's motion in part and deny it in part, and will deny Defendant Ordonez's motion.

**I.    Background.**

**A.    The BitTorrent Network and Torrential Downpour.**

The indictments in these cases allege that Defendants downloaded and shared child pornography files using the BitTorrent file-sharing network. BitTorrent is an online peer-to-peer network that allows users to download files containing large amounts of data, such as movies, videos, and music. Instead of relying on a single server to provide an entire file directly to another computer, which can cause slow download speeds, BitTorrent users can download portions of the file from numerous other BitTorrent users simultaneously, resulting in faster download speeds.

To download and share files over the BitTorrent network, a user must install a BitTorrent software "client" on his computer and download a "torrent" from a torrent-search website. A torrent is a text-file containing instructions on how to find, download, and assemble the pieces of the image or video files the user wishes to view. The client software reads the instructions in the torrent, finds the pieces of the target file from other BitTorrent users who have the same torrent, and downloads and assembles the pieces, producing a complete file. The client software also makes the file accessible to the other BitTorrent users in a shared folder on the user's computer.

Torrential Downpour is law enforcement's modified version of the BitTorrent protocol. Torrential Downpour acts as a BitTorrent user and searches the internet for internet protocol ("IP") addresses offering torrents containing known child pornography files. When such an IP address is found, the program connects to that address and attempts to download the child pornography. The program generates detailed logs of the activity and communications between the program and the IP address. Unlike traditional BitTorrent programs, the government claims that Torrential Downpour downloads files only from a single IP address – rather than downloading pieces of files from multiple

addresses – and does not share those files with other BitTorrent users.

**B.    The Investigations into Defendants' BitTorrent Activity.**

### 1.    Defendant Gonzales.

In December 2016, Agent Daniels used Torrential Downpour to identify IP address 24.255.44.200, which allegedly was making known child pornography files available on the BitTorrent network. Agent Daniels testified that he used Torrential Downpour to connect with this IP address and download child pornography video files on eight occasions between December 13, 2016 and January 9, 2017. He reviewed the Torrential Downpour activity logs to confirm that the program downloaded complete files solely from this IP address, and reviewed the video files to confirm that they were child pornography.

Through further investigation, Agent Daniels learned the subscriber information for the IP address. He obtained a search warrant for the subscriber's residence, and FBI agents searched the residence on February 8, 2017. They found a Microsoft tablet and other computer equipment. Gonzales, who lived there with his parents and siblings, stated during an interview that he had used a tablet to find and view child pornography. Forensic examinations performed by the FBI and Loehrs revealed child pornography files on the tablet, but the video files that Torrential Downpour allegedly had downloaded from the IP address were not found on the tablet or any other seized device.

On October 4, 2017, the government charged Gonzales with eight counts of distributing child pornography and one count of possessing such material. Doc. 6. The eight distribution counts are based on the video files that Torrential Downpour allegedly downloaded between December 13, 2016 and January 9, 2017. *Id.* at 1-5. The possession count is based on the child pornography found on the tablet after the search. *Id.* at 5-7.

### 2.    Defendant Ordonez.

Agent Daniels conducted a similar investigation into Defendant Ordonez's BitTorrent activity. On five occasions between December 2, 2017 and February 5, 2018,

Agent Daniels used Torrential Downpour to connect with and download child pornography files from IP address 24.251.70.98. The FBI obtained a search warrant for the residence associated with that IP address, and seized Ordonez's computer during a search on April 4, 2018. The FBI performed a forensic examination of the computer and found thousands of child pornography files in the recycle bin, including the files Torrential Downpour had downloaded. On April 17, 2018, the government charged Ordonez with five counts of distributing child pornography and one count of possessing such material. Doc. 10.

## II. Discussion.

Defendants contend that Torrential Downpour may be flawed and should be tested and verified by a third party. They also contend that they need access to the program in order to prepare effective cross examination of Agent Daniels and the presentations by their own computer experts. Defendants seek disclosure of an installable copy of the software pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Gonzales also seeks disclosure of Torrential Downpour's user and training manuals. Neither Defendant seeks the program's source code.

The government contends that Defendants have failed to show how Torrential Downpour is material to their defense. The government further contends that even if materiality has been shown, Torrential Downpour is protected from disclosure by the qualified law enforcement privilege recognized in *Roviaro v. United States*, 353 U.S. 53 (1957).

### A. Rule 16(A)(1)(E)(i) – Items Material to Preparing a Defense.

Under Rule 16(a)(1)(E), the government must disclose any "books, papers, documents, data, . . . or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense[.]" To obtain disclosure under subsection (i), "[a] defendant must make a 'threshold showing of materiality[.]'" *United States v. Budziak*, 697 F.3d 1105, 1111 (9th

Cir. 2012) (citing *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present *facts* which would tend to show that the [g]overnment is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (emphasis added); *see also Budziak*, 697 F.3d at 1111-12.

### 1. Discoverability of Investigative Software.

Many cases have addressed the discoverability of government software programs used to investigate child pornography offenses. The parties each cite lines of cases to support their positions.

Defendants rely primarily on *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), and cases that have adopted its reasoning. *Budziak* involved the FBI's use of an enhanced version of the LimeWire file-sharing program called "EP2P." *Id.* at 1107. Using that program, the FBI downloaded several child pornography files from an IP address registered to Budziak. *Id.* A forensic examination of his computer revealed multiple child pornography files, including several images the EP2P program had downloaded. *Id.* Budziak was charged with multiple counts of distributing and possessing child pornography. *Id.* The district court denied Budziak's motions to compel disclosure of the government's EP2P program, and he was convicted on each count. *Id.* at 1107-08.

On appeal, the Ninth Circuit held that the district court abused its discretion in denying Budziak's motions to compel. It noted that he did more than assert a generalized need to review the EP2P program before trial; he identified particular defenses to the distribution charges that discovery on the EP2P program could help him develop. *Id.* at 1112. Specifically, he "presented evidence suggesting that the FBI may have only downloaded fragments of child pornography files from his 'incomplete' folder, making it 'more likely' that he did not knowingly distribute any complete child pornography files to [the FBI]." *Id.* at 1112. He also presented "evidence suggesting that the FBI agents could have used the EP2P software to override his sharing settings." *Id.* Given this

evidence, the Ninth Circuit concluded that "access to the EP2P software was crucial to Budziak's ability to assess the program and the testimony of the FBI agents who used it to build the case against him." *Id.*

Other cases have followed *Budziak*. For example, the district court in *United States v. Crowe*, No. 11 CR 1690 MV, 2013 WL 12335320, at *7 (D.N.M. Apr. 3, 2013), required the government to allow the defense expert to examine and use a copy of the government's confidential Shareaza software at a secure government facility. The court did so because the defendant in *Crowe*, like the defendant in *Budziak*, presented specific evidence to suggest that access to the software was material to preparing the defense. *See id.* Specifically, the defense expert testified that "some of the files alleged to have been found by law enforcement in the shared space of Defendant's computer, were not found there during her analysis." *Id.*

Another line of cases has refused to permit defendants in child pornography cases to gain access to confidential government investigative software. In *United States v. Pirosko*, 787 F.3d 358 (6th Cir. 2015), a case cited by the government in response to these motions, the court of appeals affirmed a district court decision denying discovery of the "law enforcement tools" used to locate and download child pornography from the defendant's computer. The Sixth Circuit distinguished *Budziak*, noting that the defendant in that case had presented the evidence described above. 787 F.3d at 365-67. The defendant in *Pirosko*, by contrast, "failed to produce any such evidence, simply alleging that he might have found such evidence had he been given access to the government's programs." *Id.* at 365. As a result, discovery was not warranted. *Id.*

Other cases have likewise found that the defendant in child pornography cases has failed to make a showing to support their claim that disclosure of government investigative software would be material to preparing the defense. *See United States v. Jean*, 891 F.3d 712, 715 (8th Cir. 2018) (affirming denial of motion to compel government software because the defendant was convicted of receiving and possessing child pornography and "the likelihood of any help to [his] defense was 'vanishingly

small'"); *United States v. Chiaradio*, 684 F.3d 265, 277 (1st Cir. 2012) (expressing no view on whether the EP2P source code was discoverable under Rule 16 where the defendant "neither contradicted nor cast the slightest doubt upon" the government's evidence that the FBI had downloaded child pornography from his computer); *United States v. Hoeffener*, No. 4:16-CR-00374, 2017 WL 3676141, at *13 (E.D. Mo. Aug. 25, 2017) (denying motion to compel where "nothing in the . . . receipt-of-child-pornography charge reveal[ed] that the charge [was] based, to any extent, on materials downloaded from [the defendant's] computer while [the FBI] used Torrential Downpour"); *United States v. Blouin*, 2017 WL 2573993, at *3 (W.D. Wash. June 14, 2017) (denying motion to compel where the defendant did not dispute that the government's software downloads files from a single source); *United States v. Maurek*, No. CR-15-129-D, 2015 WL 12915605 at *3 (W.D. Okla. Aug. 31, 2015) (denying motion to compel where the defendant failed to present specific facts which would tend to show how disclosure of Torrential Downpour would be material to his defense); *United States v. Feldman*, No. 13-CR-155, 2015 WL 248006, at *6 (E.D. Wis. Jan. 19, 2015) (finding a lack of materiality where the defendant was charged with receiving and possessing child pornography based on a search of his computer and not the use of the government's software).

*Budziak* is, of course, binding precedent for this Court. But the Court finds the distinction between it and the cases just discussed to be consistent with traditional Rule 16 principles. As already noted, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice [under Rule 16(a)(1)(E)(i)]; a defendant must present *facts* which would tend to show that the [g]overnment is in possession of information helpful to the defense." *Mandel*, 914 F.2d at 1219 (emphasis added). In *Budziak* and *Crowe*, the defendants presented evidence to support their contention that discovery of the government software was material to preparing their defense to distribution of child pornography. In the other line of cases, they did not. The Court will keep this distinction in mind as it considers the arguments of Defendants

Gonzalez and Ordonez.

## 2. Gonzales Has Shown Materiality.

Counts one through eight allege violations of 18 U.S.C. § 2252(a)(2). Doc. 1. That section provides criminal punishment for any person who "knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce . . . including by computer, . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct[.]" Evidence is sufficient to support a conviction for distribution under § 2252(a)(2) "when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it." *Budziak*, 697 F.3d at 1109.

Defendant Gonzales argues that Torrential Downpour is material to his defense because the distribution charges are based on child pornography files that Torrential Downpour purportedly downloaded from his tablet but that were not found on the tablet when it was seized by the FBI. Doc. 25 at 8-9. He has presented an affidavit from his expert, Tami Loehrs, confirming that the files are not on the tablet. Doc. 25-5. Loehrs explains in her affidavit that it is critical to Gonzales's defense to understand how Torrential Downpour functions in order to determine the program's reliability and accuracy in identifying files that Gonzales is charged with knowingly distributing. *Id.* at ¶ 17. She further states that based on her many years of research and testing of peer-to-peer file sharing software, including BitTorrent, she has discovered that all of these programs "contain bugs, they do not always function as intended and the data reported by these applications is not always accurate or reliable." *Id.* ¶ 22.

Loehrs offered similar opinions at the evidentiary hearing. She opined that all software programs have flaws, and Torrential Downpour is no exception. *See* Doc. 50, Hr'g Tr. at 16:15-23, 18:17-19, 31:6-10 (Jan. 31, 2019). She bases this opinion on her work in other cases involving Torrential Downpour and the fact that the files the program allegedly downloaded in this case were not found on Gonzales's tablet. *Id.* at 16:1-23.

Loehrs also provided a plausible explanation for how Torrential Downpour may have erroneously identified Gonzales's tablet as offering child pornography files over the BitTorrent network. Loehrs explained that, because a torrent is simply a text-file containing the hash values – or "fingerprints" – of the target image and video files, a BitTorrent user who downloads a torrent has fingerprints of the target files, even if he has not yet downloaded them. *Id.* at 22:14-23:8. Loehrs stated that the actual downloading of the target files occurs only when the client software instructs the torrent to search for those files on the BitTorrent network and download them to a designated folder on the user's computer. *Id.* at 23:9-25:3. She further stated that a forensic examination of the device used to download the torrent can determine whether the torrent has been used to download the file, and her examination of Gonzales's tablet revealed no evidence suggesting that he downloaded the files listed in counts one through eight. *Id.* at 25:4-22, 28:7-9. She opined that Torrential Downpour may have obtained the files from other BitTorrent users, particularly in light of the fact that this is how peer-to-peer file sharing programs are designed to work. *Id.* at 31:3-32:12.[1]

The Court finds that this evidence brings this case squarely within the holding of *Budziak*. Defendant Gonzalez has done more than simply request access to the software and argue that it is material to his defense. He has presented evidence that calls into question the government's version of events. Given his evidence, the Court finds that "the functions of the [program] constitute[] a 'very important issue' for [Gonzales's] defense." *Budziak*, 697 F.3d at 1112 (quoting *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003)); *see Crowe*, 2013 WL 12335320, at *7.[2]

The government concedes that the child pornography files charged in counts one

---

[1] The government contends that Loehrs's affidavit is unreliable, citing several cases rejecting or limiting the scope of her testimony. Doc. 29 at 5, 20-22. The Court found Loehrs credible at the evidentiary hearing and has no basis at this point for excluding her opinions under Federal Rule of Evidence 702.

[2] Gonzales asserts that the government's need to present evidence of Torrential Downpour in its case-in-chief also entitles him to discovery under Rule 16(a)(1)(E)(ii), but he fails to develop this argument or cite relevant case law.

through eight were not found on Gonzales's tablet. Doc. 29 at 3. The government notes, however, that torrent names associated with these files were located in a "µTorrent" client software folder on the tablet, that some of these torrent names were in a "jump list," which suggests that Gonzalez had clicked on them, and that other child pornography files were found on the tablet. *Id.* at 13. Materiality is defeated, the government contends, because these facts corroborate its claim that Gonzales once possessed the files charged in counts one through eight and was able to distribute them to the FBI. *Id.* at 17.

But where a defendant has demonstrated materiality, the Court "should not merely defer to government assertions that discovery would be fruitless." *Budziak*, 697 F.3d at 1112-13. While the Court has no reason to doubt the government's good faith in this case, Gonzales "should not have to rely solely on the government's word that further discovery is unnecessary." *Id.* at 1113. Because Gonzales has shown that the Torrential Downpour is material to his defense, he should be given access to the program to investigate its reliability and help him prepare for cross-examination of Agent Daniels.[3]

Gonzales also contends that Torrential Downpour is material to a Fourth Amendment challenge because the program "searches beyond the public domain, essentially hacks computers searching for suspect hash values, and therefore conducts a warrantless search[.]" Doc. 25 at 6. But Gonzales identifies no evidence suggesting that Torrential Downpour accessed non-public space on his tablet. Gonzales has failed to show that Torrential Downpour is material to a Fourth Amendment challenge. *See Hoeffener*, 2017 WL 3676141, at *15 (finding a lack of materiality where the defendant pointed to no "aspects of his expert's declaration that support his request for information based on a search warrant challenge").

---

[3] The government presents a log file purportedly showing that Agent Daniels used Torrential Downpour to download from Gonzales's tablet the child pornography file listed in count four. Doc. 29-2; *see* Doc. 6 at 3. The government asserts that this log file and the ones associated with the other distribution counts independently confirm that Agent Daniels downloaded complete child pornography files solely from Gonzales's tablet. Doc. 29 at 26. But the log files were created by Torrential Downpour. If it is flawed in the ways Gonzales suggests, they likely would be flawed as well.

- 10 -

### 3. Ordonez Has Failed to Show Materiality.

Defendant Ordonez asserts that it is critical to understand how Torrential Downpour functions "to determine its reliability and accuracy in identifying files reported[ly] involving [his] IP address and whether law enforcement went beyond accessing information that was publicly available." Doc. 32 at 3. But Ordonez has identified no "specific defense to the charges against him that the Torrential Downpour program could help him develop." *Maurek*, 2015 WL 12915605 at *3. Nor has he presented any evidence in support of this materiality argument. Conclusory allegations of materiality are not sufficient to compel disclosure under Rule 16(a)(1)(E)(i). *See Budziak*, 697 F.3d at 1111-12 (citing *Mandel*, 914 F.2d at 1219); *Santiago*, 46 F.3d at 894-95 (the defendant's "assertions, although not implausible, do not satisfy the requirement of specific facts, beyond allegations, relating to materiality").

Defendant Ordonez does argue in his motion that his expert needs access to Torrential Downpour to determine its reliability. Doc. 32 at 2. He clarified in his reply brief that an associate with Loehrs's firm, Michele Bush, is his defense expert. Doc. 45 at 4. Bush apparently was retained by Ordonez's former counsel and prepared a report of her examination of Ordonez's computer in July 2018, but the report has not been disclosed to the government and has not been provided to the Court. *See* Doc. 43 at 2 & n.1. Nor did Defendant Ordonez present an affidavit from Bush to support his motion, or call Bush to testify at the evidentiary hearing. Loehrs testified at the hearing that her firm is no longer working on Defendant Ordonez's case and she has no familiarity with the FBI's investigation in that case. Doc. 50 at 58:3-7. Ordonez's counsel stated that he intends to engage another expert going forward (*id.* at 169:5-6), and he cross-examined Agent Daniels at the hearing, but he has presented no case-specific expert evidence to support the motion to compel.

Because Defendant Ordonez has failed to make a threshold showing of materiality under Rule 16(a)(1)(E)(1), his case falls within the line of cases that distinguish *Budziak* and deny discovery of government investigative software. *See Pirosko*, 787 F.3d at 366

(the defendant's mere allegation that there were unanswered questions about the government's software was not sufficient to show materiality); *Maurek*, 2015 WL 12915605, at *3 (denying motion to compel disclosure of Torrential Downpour where the defendant offered nothing more than conclusory allegations of materiality); *United States v. Alva*, No. 2:14-cr-00023-RCJ-NJK, 2018 WL 327613, at *2 (D. Nev. Jan. 8, 2018) (distinguishing *Budziak* where the defendant presented no evidence that he did not store child pornography in shared folders and made no showing that his "theory behind requesting the RoundUp source code amount[ed] to anything more than an abstract possibility"); *United States v. Harney*, No. CR-16-38-DLB-CJS, 2018 WL 1145957, at *6 (E.D. Ky. Mar. 1, 2018) (finding that the defendant's arguments in support of his need for the software were closer to *Pirosko* than *Budziak* because he "merely alleged he might find evidence in support of his defense if his expert [was] provided the opportunity to analyze the requested information in its entirety").

### B. *Brady* and *Giglio*.

Defendants also seek disclosure of Torrential Downpour under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). "The *Brady* standard for materiality is higher than Rule 16's, and its scope narrower." *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-TEH, 2016 WL 3185008, at *2 (N.D. Cal. June 8, 2016). Under *Brady*'s constitutional mandate, the government "is obligated by the requirements of due process to disclose material exculpatory evidence on its own motion, without request." *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997). Under *Giglio*, the government's obligation to disclose exculpatory evidence was expanded to include information that could be used to impeach government witnesses. *See Giglio*, 405 U.S. at 154.

But it is the government, not the defendant or the trial court, that decides prospectively what information, if any, is exculpatory and must be disclosed under *Brady* and *Giglio*. *See United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016). "The *Brady/Giglio* doctrine does not require the government to disclose neutral . . . evidence."

*United States v. Correia*, No. 2:17-CR-00001-JAD-CWH, 2018 WL 3416517, at *2 (D. Nev. July 9, 2018) (citing *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011)). Defendants have made no showing that Torrential Downpour will prove to be exculpatory or could be used to impeach a government witness. The Court will deny Defendants' motions to the extent they seek disclosure of Torrential Downpour under *Brady* and *Giglio*.

This ruling is not inconsistent with Gonzales's showing of materiality under Rule 16 because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Indeed, "[e]ven inculpatory evidence may be relevant [because a] defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy [or] seek a plea agreement instead of going to trial." *Id.*; *see also United States v. Toilolo*, No. CR-11-00506-LEK, 2014 WL 1091715, at *3 (D. Haw. Mar. 17, 2014) ("Rule 16 is broader than *Brady*, 'requiring disclosure of all documents material to preparing the defense.'" (quoting *Muniz-Jaquez*, 718 F.3d at 1183)).

### C. The Qualified Law Enforcement Privilege Under *Roviaro*.

Even when a defendant is entitled to disclosure under Rule 16(a)(1)(E)(i), the evidence may be withheld under a law enforcement privilege. In *Roviaro*, the Supreme Court held that the government had a privilege to withhold from disclosure the identities of certain confidential informants. 353 U.S. at 59. Subsequent cases have expanded the privilege to other investigative techniques, including software programs like Torrential Downpour. *See Pirosko*, 787 F.3d at 366 (applying the privilege to the government's Shareaza program); *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986) (surveillance equipment); *United States v. Harley*, 682 F.2d 1018, 1020-21 (D.C. Cir. 1982) (surveillance locations).

The Supreme Court has declined to establish fixed rules for deciding whether the government may withhold material information under a law enforcement privilege,

holding instead that trial courts must engage in balancing on a case-by-case basis:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest and protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62. The trial court's balancing must afford due regard to the government's interest in maintaining the secrecy of its investigative technique, but must also fully protect the defendant's interest in a fair trial. When the two interests come squarely into conflict, the defendant's right to a fair trial should prevail because the government can always choose to protect its investigative technique by dropping the prosecution and due process dictates that a citizen should never be convicted in an unfair trial. *See United States v. Turi*, 143 F. Supp. 3d 916, 921 (D. Ariz. 2015).

Having considered the particular circumstances of this case and the factors to be balanced under *Roviaro*, the Court finds that disclosure of an installable copy of Torrential Downpour for testing by a third-party is not warranted. Child pornography is a scourge, victimizing the most innocent for the basest of reasons. The government has a legitimate interest in preserving its ability to investigate and prosecute distribution of this material – distribution that creates the market and fuels the demand for creation of more child pornography. Agent Daniels testified that the government's investigative efforts would be severely hampered if a copy of Torrential Downpour got into the wrong hands. Countermeasures could be developed that would thwart law enforcement's monitoring of the BitTorrent network for suspected child pornography. Doc. 50 at 126:10-20. For this reason, the government closely guards Torrential Downpour and limits the persons granted access to it. He testified that the program must remain in law enforcement custody at all times to avoid the risk of disclosure to unauthorized third-parties. *Id.* at 126:23-128:15.

The Court concludes that this substantial government interest outweighs Defendant Gonzales's need for an independent copy of Torrential Downpour. *See Harney*, 2018 WL 1145957, at *11 (finding that the risk of inadvertent leaking by third parties who would have access to the government's software outweighed the defendant's need for such material). But given the substantial defense interest established by Defendant Gonzalez, the Court concludes that his expert should be granted access to Torrential Downpour for purposes of assisting in preparing the defense. The Court will balance these interests by adopting the Rule 16 disclosure method authorized in *Crowe*:

> [T]he defense expert [will be permitted] to examine the software at issue at a designated law enforcement facility, at a mutually convenient date and time, for as much time as is reasonably necessary for the expert to complete her examination. No copies of the software shall be made. The software shall not leave the custody of the law enforcement agency that controls it. Any proprietary information regarding the software that is disclosed to the defense expert shall not be reproduced, repeated or disseminated in any manner. Violation of [this] order shall subject the defense expert and/or defense counsel to potential sanctions by this Court.

2013 WL 12335320, at *8.[4]

The Court at this point will not require discovery of the Torrential Downpour manuals. Defendant Gonzalez has not provided evidence or explained how the manuals will aid in preparation of his defense. Defendant Gonzalez may raise this issue with the Court if examination of the software by Loehrs suggests that the manuals would be helpful to the defense, at which point the Court will hear from both parties before making a decision.

**IT IS ORDERED:**

1. Defendant Gonzales's motion to compel discovery (Doc. 25, Case No. CR-17-01311) is **granted in part** and **denied in part** as set forth in this order.

2. Defendant Ordonez's motion to compel discovery (Doc. 32, Case No. CR-

---

[4] Agent Daniels made clear that such access would pose no security risk. Doc. 50 at 156:25-157:1-3.

18-00539) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 6/28/2018 in Case No. CR17-01311 PHX DGC and 12/7/2018 in Case No. CR18-00539 PHX DGC.

Dated this 19th day of February, 2019.

*David G. Campbell*

David G. Campbell
Senior United States District Judge