Lise Witt
Arizona State Bar No. 013118
LisaLaw, LLC
1350 E. McKellips Road, Suite 1
Mesa, AZ  85203
Tel:  (480) 840-1775
Fax:  (480) 656-0812
e-mail:  lisarwitt@gmail.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:18-cr-00539-DGC |
|---|---|
| Plaintiff, | |
| vs. | EMERGENCY MOTION FOR BAIL PENDING APPEAL |
| Aaron Anthony Ordonez, | (Oral Argument Requested) |
| Defendant. | (Honorable David G. Campbell) |

Defendant Aaron Anthony Ordonez, by and through undersigned counsel, hereby submits his Emergency motion for Bail Pending Appeal based on the following Memorandum of Points and Authorities.

Respectfully submitted,

Dated:  March 25, 2020

/s/ Lise Witt (#013118)
Lise Witt
Attorney for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS

Defendant Aaron Anthony Ordonez ("Aaron") was found guilty on five counts of distributing child pornography and one count of possession of child pornography. He was sentenced to 14 years in prison on February 10, 2020. His case is currently pending on appeal.

Two exigent circumstances caused Appellate Counsel to deem this an emergency motion. The first is the coronavirus pandemic declared by WHO on March 11, 2020. The second is that she just learned yesterday that Aaron was a patient at B-Healthy Clinic in Phoenix where he was about to undergo testing to see if he had lupus or multiple sclerosis (MS). He never completed the testing because he was arrested in August 2019.

## II. LAW AND ARGUMENT

### A. Standard for Bail Pending Appeal

Rules 9(a) and (c) of the Federal Rules of Appellate Procedure govern motions for release after conviction pending appeal. Pursuant to Rule 9(c), the applicable statute is 18 U.S.C.A. § 3143(b)(1) which states in pertinent part:

> **"Release or detention pending appeal by the defendant.--(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--

> **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> **(i)** reversal, (ii) an order for a new trial"

Aaron does not have to show that his appellate issues are likely to result in reversal or an order for a new trial. Instead," "substantial" defines the level of merit required in the question presented and 'likely to result in reversal or an order for a new trial' defines the type of question that must be presented." *See United States v. Handy,* 761 F.2d 1279, 1280 (9th Cir. 1985). The Ninth Circuit clarified *Handy* in 2003:

> ". . . In *Handy* we held that an issue is substantial if it is 'fairly debatable' or 'fairly doubtful,' that is, 'of more substance than would be necessary to a finding that it was not frivolous. (citation omitted) The second part of the requirement—that the question be likely to result in reversal, a new trial, a non-prison sentence, or a sentence reduced to less than the time that would be served by the end of the appeal process—concerns only the type of question that meets the requirement; it does not involve assessing the likelihood that a reversal will occur in the particular case." *See United States v. Garcia,* 340 F.3d 1013, 1021 n.5 (9th Cir. 2003).

*Handy* and *Garcia* do not require that Aaron show that his claims will be successful; they require that he show that his appeal presents non-frivolous issues that would result in reversal or an order for a new trial if he is ultimately successful.

*Garcia* also provides guidance concerning the wide range of factors that this Honorable Court may consider in determining whether there are exceptional

reasons why incarceration is inappropriate. These include: whether defendant led an exemplary life prior to his offense and would likely continue to contribute to society significantly if allowed to remain free on bail; the length of the prison term; any factors that would render prison unusually harsh for a particular defendant; the nature of the defendant's arguments on appeal; and any factors that would render the defendant's flight or danger to the community exceptionally unlikely. *See Id.* at 1019-20.

Aaron satisfies these standards.

**B. Aaron's appeal raises non-frivolous questions that would likely result in a reversal or new trial.**

The Ninth Circuit will consider an ineffective assistance of counsel claim on direct appeal only "where the record is sufficiently developed to permit review and determination of the issue, or the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *See United States v. Singh,* 924 F.3d 1030 (9th Cir. 2019).

Aaron lived in his mother Renee's ("Renee") home with her and her then-boyfriend Jacob Gomez ("Gomez"). The Government found the child porn images on his personal desktop computer which was not password-protected and sat in an open basement area easily accessible to Gomez. Gomez suspiciously destroyed his cell phone when he learned that Aaron had been arrested on these charges. He had

been asked to leave a family friend's party based on his creepy behavior around their young daughter. Renee's hairdresser forbade him from coming over to her house ever again because he insisted on seeing her young daughter asleep in bed and kissed her. Gomez was not employed and frequently hung out around the house. Aaron and his family wanted his trial counsel, Herschel Ber ("Ber"), to present a defense that Gomez was the person who actually downloaded the child porn images. Ber failed to investigate Gomez as a possible suspect and failed to call him as a witness at trial.

Aaron was not home most evenings since he wanted to hide his "huffing" and drinking from Renee. Ber failed to gather cell phone tower location data from T-Mobile which would have shown that Aaron and his cell phone were not home to download child porn on Aaron's computer on the dates of violation.

At the probation revocation hearing in August 2019, Ber failed to effectively question FBI agent Daniels regarding numerous inconsistencies and errors in his affidavit for search warrant and testimony. He also did an abysmal job during his direct examination of Aaron's witnesses at the trial causing them to become confused and negatively impacting their credibility before the jury. Finally, he failed to use the digital forensics analysis prepared by Loehrs Forensics. Ber's representation was so egregious that he caused an innocent man to be wrongly

convicted of distribution and possession of child porn. In conclusion, Ber's ineffective assistance of counsel is a nonfrivolous appellate issue.

Law enforcement continued to pressure and question Aaron after he was arrested and had requested an attorney. They put him on suicide watch and held him naked for a week in a room while continuing to ignore his requests for an attorney. He was under duress and led to believe that Renee was mortally wounded. These facts are nonfrivolous appellate issues of voluntariness of Aaron's statements, *Miranda* violations, and law enforcement misconduct.

Aaron was ordered to pay restitution totaling $15,000.00 to three "victims" of his offenses as part of his sentence on February 10, 2020. The U.S. Supreme Court held that the Government or the victim must prove a proximate causal link between the offense and the victim's costs and that the court could order restitution in an amount that represents the defendant's relative role in the larger process that caused harm to the victim in *Paroline v. United States,* 572 U.S. 434 (2014). Appellate Counsel's FastCase search revealed that Aaron's appellate issue of whether the restitution was appropriate pursuant to *Paroline* would be an issue of first impression in the 9th Circuit. In conclusion, Aaron's appellate issue concerning the appropriateness of the restitution is nonfrivolous.

**C.  Aaron's release would not endanger the community nor does he present a risk of non-appearance.**

Aaron was on pretrial release for over six months from February 1, 2019, until he was arrested on August 9, 2019. During that time, he worked for Culver's Restaurant in Phoenix but lost that job when he was arrested. *See* PSR, p. 11. Aaron did not commit any new offenses or do anything else to endanger the community. He also made no attempts to flee the state or country. He has shown this Honorable Court that he is not a danger to the community or a flight risk if he was released pending appeal.

On August 9, 2019, FBI agents searched his mother's home for computers and other electronic devices pursuant to a sealed search warrant. They found a smart phone and Amazon tablet with wi-fi in his bedroom when he did not have permission to possess electronic devices. This Honorable Court revoked Aaron's pretrial release. The revocation had nothing to do with Aaron endangering the community or attempting to flee.

Aaron was assessed by Richard Samuels, Ph.D., who authored a Confidential Psychosexual Risk Assessment which was completed on February 3, 2020. Dr. Samuels concluded:

> "Thus, it is in this examiner's professional opinion that, within all reasonable psychological probability, Aaron Anthony Ordonez has a low risk to reoffend his Category B sexual crime involving the downloading of child pornography as described above for the following reasons:

- He has no prior sexual offenses, no criminal history, while his only sex offense is a Category B or nonviolent sex offense.
- Child pornography-only offenders have a very low probability of engaging in future hands-on offenses. He does not appear to possess a significant amount of antisocial or sadistic traits based on the MCMI-III test data.
- He has no arrests for violent behavior.
- His actuarial scores predict a low risk to reoffend and his Hare PCL-R is negative for psychopathy.
- Cognitive Distortions, commonly seen in sex offenders, are not indicated on the MSI-II results." *See* Psychosexual Risk Assessment, p. 19.

Dr. Samuel's assessment provides further proof that Aaron will not endanger the community if he was released pending appeal.

Aaron is welcome to live with Renee if this Honorable Court orders a reasonable bail amount that his family can pay and he is released to home detention.

**D.   Aaron has demonstrated exceptional reasons that his continued incarceration is not appropriate.**

According to his PSR, he is a U.S. citizen. *See* PSR, p. 3. He "huffed" compressed air canisters and drank alcohol daily during the relevant time period to try to end his life. *See* PSR, p. 5. He no longer "huffs" and last drank alcohol in April 2018. *See Id.,* p.p. 10-11. His Southwest Behavioral Health Assessment on February 15, 2019 noted that he first experienced suicidal ideation after his discharge from the Navy in 2010 and after his arrest on the instant offenses. *See Id.* at p. 10. He was previously diagnosed with PTSD, bipolar depression, and

depression. *See Id.* He participated and engaged in treatment at Southwest Behavioral. *See Id.* He told the PSR writer:

> "56. The defendant related he is in a "better place" now, is more positive, and has goals. He indicated he does not currently experience suicidal ideation and is not in need of mental health treatment." *See Id.*

Aaron had no juvenile adjudications and no adult criminal convictions. *See Id,* p. 8. His ability to work is impacted because he injured his back shortly after enlisting in the U.S. Navy in 2010. *See Id.,* p. 9. Specifically, he has compressed discs, bulging discs, and pinched nerves at the base of his neck and in his lower and upper back. *See Id.* His back injury caused degeneration of strength and sensations in his hands. *See Id.* He has worked since age 20. *See Id.* at p.p. 11-12.

WHO declared coronavirus a pandemic on March 11, 2020. Governor Doug Ducey declared a state emergency the same day and President Donald Trump declared a national emergency on March 13, 2020. On March 24, 2020, Ryan Lucas of npr.org reported that three inmates and three staff members at federal correctional facilities have tested positive according to the Federal Bureau of Prisons which is attached as Exhibit 1. Coronavirus is already in the federal prisons. Preventative measures such as self-quarantine and social distancing are meaningless concepts that are impossible to implement in federal prisons. Federal prisoners are sitting ducks for coronavirus to sweep through and infect everyone.

The CDC has stated that people with autoimmune diseases are at risk of developing severe complications or even dying if they contract coronavirus. Attached Exhibit 2 is two pages from mayoclinic.org on Lupus and MS. The first page states:

> "Lupus is a systemic autoimmune disease that occurs when your body's immune system attacks your own tissues and organs. Inflammation caused by lupus can affect many different body systems—including your joints, skin, kidneys, blood cells, brain, heart and lungs."

The second page states:

> "In MS, the immune system attacks the protective sheath (myelin) that covers nerve fibers and causes communication problems between your brain and the rest of your body. Eventually, the disease can cause permanent damage or deterioration of the nerves."

Aaron's health care provider was concerned enough that he might have lupus or MS to order testing yet testing was never done due to his August 2019 arrest. He may have undiagnosed lupus or MS and therefore be considered a vulnerable person according to the CDC because of his compromised immune system. In other words, he may be at an increased risk of having severe complications like lung damage, kidney damage, or even death if he contracts coronavirus.

**III. CONCLUSION**

Aaron satisfies the standard for bail pending appeal under 18 U.S.C. § 3143 and should be released. He has established that his appeal presents substantial, nonfrivolous questions that would result in reversal or an order for a new trial. He

has established that his release does not pose a danger to the community, that he is not a flight risk, and that exceptional circumstances support his release.

For the foregoing reasons, Appellate Counsel requests that this Honorable Court issue an order releasing Aaron on a reasonable bond and home detention to Renee's home.

Respectfully submitted,

LISE WITT

Dated:  March 25, 2020          By:  /s/ Lise Witt
                                      Lise Witt
                                      Attorney for Defendant Ordonez

# CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System and a copy was emailed and mailed to the following:

Gayle L. Helart
U.S. Attorney's Office
2 Renaissance Square
40 N. Central Ave., Ste. 1800
Phoenix, AZ  85004-4408
gayle.helart@usdoj.gov

Brett Allen Day
U.S. Attorney's Office
2 Renaissance Square
40 N. Central Ave., Ste. 1800
Phoenix, AZ  85004-4408
Brett.day@usdoj.gov

BY: /s/ Lise Witt (#013118)
Lise Witt